UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Dante Silva</u>


     v.                                      Civil No. 09-cv-388-JD
                                         Opinion No. 2010 DNH 049

<u>Warden, New Hampshire</u>
<u>State Prison</u>


O R D E R

     Dante Silva seeks relief under 28 U.S.C. § 2254 from his
conviction on a charge of dispensing a controlled drug, which
resulted in a death.  Silva contends that the trial court
violated his Confrontation Clause rights under the Sixth
Amendment by allowing a forensic toxicologist, who did not do the
underlying testing, to testify about the cause of death and by
admitting a laboratory report into evidence.  The Warden moves
for summary judgment, contending that Silva did not exhaust his
claims in the state courts and that the state court decision was
neither contrary to nor an unreasonable application of then-
existing federal law.


<u>Background</u>

     On March 14, 2006, Dante Silva made two purchases of heroin
from his drug supplier.  At least for the second purchase,

Silva's girlfriend, Caitlyn Brady, drove with him to meet the supplier.

Silva and Brady returned to Silva's grandparents' house, where Silva was staying, and they each "shot up heroin."  They watched a movie, after which Silva went upstairs to bed, and Brady slept downstairs.  Silva left early in the morning of March 15 to go to work.  When Brady did not answer his calls later in the morning, Silva asked his grandmother to check on her. Shortly after noon, someone called 911 from Silva's grandparents' house, reporting that Brady was unconscious and unresponsive. Brady was transported to a hospital, where she was pronounced dead.

A blood sample taken from Brady's body was sent to the National Medical Service ("NMS") laboratory for testing.  Dr. Jennie Duval conducted an autopsy on Brady's body.  After Dr. Duval reviewed the results for the blood sample from NMS, she concluded that Brady died from the toxic effects of opiates and that the death was accidental.

Silva was indicted on a charge of dispensing a controlled drug with death resulting, in violation of New Hampshire Revised Statutes Annotated § 318-B:26, IX.[1]  He was tried in Rockingham

---

[1]He was also charged with one count of falsifying physical evidence, but that charge was dismissed at the close of the

2

County Superior Court in April of 2007.  During trial, the state called Matthew McMullin, a forensic toxicologist at NMS, to testify as an expert witness.[2]  McMullin had not performed any of the tests on the blood sample taken from Brady's body but instead had certified the results of the blood tests, based on a review of the data.  Through McMullin, the state introduced the NMS laboratory report ("lab report") for the blood testing.  The defense objected to the admissibility of McMullin's testimony and the lab report on several grounds, which included objecting to their admission on the ground that Silva's Sixth Amendment Confrontation Clause rights would be violated.  The court allowed the evidence over Silva's objection.

On April 18, 2007, Silva was convicted on the charge of dispensing a controlled drug, which resulted in a death.  He was sentenced to ten years to life in prison.  Silva appealed his conviction to the New Hampshire Supreme Court, and the court affirmed the conviction on November 20, 2008.  See State v.

---

state's case.

[2]When asked at trial, Matthew McMullin spelled his last name with an "i".  The New Hampshire Supreme Court, however, spelled his name as "McMullen," with an "e".  This court will use the spelling that McMullin provided as reported in the trial transcript.

<u>Silva</u>, 158 N.H. 96 (2008).  Silva filed a timely petition for habeas review in this court.

<u>Discussion</u>

Silva contends that the trial court's decision to allow McMullin's testimony and to admit the lab report, affirmed by the New Hampshire Supreme Court, violated the Confrontation Clause, as determined by the United States Supreme Court in <u>Crawford v. Washington</u>, 541 U.S. 36, (2004), and more specifically in <u>Melendez-Diaz v. Massachusetts</u>, 129 S. Ct. 2527 (2009).  The Warden moves for summary judgment on the grounds that Silva failed to exhaust his claims based on <u>Melendez-Diaz</u> and that the New Hampshire Supreme Court's decision affirming Silva's conviction is neither contrary to nor an unreasonable application of <u>Crawford</u>.  Silva objects, contending that he exhausted his claims and that the New Hampshire Supreme Court's decision is both contrary to and an unreasonable application of the rule in <u>Crawford</u>.

A.  <u>Exhaustion</u>

The Warden asserts that Silva's claim is based on <u>Melendez-Diaz</u>.  That claim, the Warden argues, has not been exhausted because the state courts were never given a full and fair

4

opportunity to address the Confrontation Clause issue in light of
Melendez-Diaz.  The Warden further argues that Melendez-Diaz is a
new rule that is not retroactively applicable to Silva's case.

Before seeking relief under § 2254, a prisoner must exhaust
available state remedies.  § 2254(b)(1); Picard v. Connor, 404
U.S. 270, 275 (1971).  To exhaust a claim, "a petitioner must
present that claim fairly and recognizably to the state courts."
Janosky v. St. Amand, --- F.3d ---, 2010 WL 366743, at *9 (1st
Cir. Feb. 3, 2010) (internal quotation marks omitted).  The legal
theory presented in the state and federal courts must be the
same.  Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007).  A
claim is exhausted if it was fairly presented through the state
system to the highest court available on direct review.  Baldwin
v. Reese, 541 U.S. 27, 29 (2004).  Presenting a claim for the
first time to the state's highest court on discretionary review,
however, does not satisfy the exhaustion requirement.  Castille
v. Peoples, 489 U.S. 346, 351 (1989).

The Warden's exhaustion theory is based on a
misunderstanding of Silva's claim.  At trial and on appeal, Silva
challenged McMullin's testimony and the admissibility of the lab
report based on the Confrontation Clause as interpreted in
Crawford.  That claim was exhausted.

After Melendez-Diaz was decided, Silva filed a motion with the New Hampshire Supreme Court to reopen his case in light of the holding in that case.  The supreme court denied the motion without prejudice "to seek relief in the superior court or other appropriate forum."  Instead of pursuing relief under Melendez-Diaz in state court, Silva chose to seek habeas relief in federal court.  Therefore, a claim based on Melendez-Diaz was not exhausted in state court.  In addition, the case here would not be stayed to allow exhaustion of a Melendez-Diaz claim because such a claim would be futile, as Melendez-Diaz does not apply retroactively to cases on collateral review.  See, e.g., Newsome v. Superintendent, 2010 WL 597943, at *3 (N.D. Ind. Feb. 17, 2010); Brewster v. People, 2010 WL 317919, at *6, n.3 (E.D.N.Y. Jan. 21, 2010); Louder v. Coleman, 2009 WL 4893193, at *1 (W.D. Pa. Dec. 10, 2009); Carillo v. United States, 2009 WL 4675798, at *2, n.1 (N.D. Ill. Dec. 3, 2009); Larkin v. Yates, 2009 WL 2049991, at *2 (C.D. Cal. July 9, 2009).

Silva's claim for purposes of habeas review in this court is based on Crawford, which has been interpreted and applied by the Supreme Court in subsequent cases, including Melendez-Diaz.  The Crawford claim was exhausted.

6

B.   <u>Availability of Relief Under § 2254</u>

Because the New Hampshire Supreme Court addressed Silva's
Confrontation Clause claim on the merits, review of his claim is
deferential, pursuant to § 2254(d).  <u>See</u> <u>Clements v. Clarke</u>, 592
F.3d 45, 52 (1st Cir. 2010).  Under the deferential standard,
when the state court's determination of the facts is not
contested, a writ of habeas corpus will not be granted unless the
state court's adjudication of the federal claims "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States."  § 2254(d)(1).
"'[C]learly established Federal law,'" as used in § 2254(d)(1),
"'refers to the holdings, as opposed to the dicta, of [the
Supreme] Court's decisions as of the time of the relevant state-
court decision.'"  <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)
(quoting § 2254(d)).

<u>Melendez-Diaz</u> was decided on June 25, 2009.  The New
Hampshire Supreme Court decided Silva's appeal on November 20,
2008.  Therefore, clearly established federal law, for purposes
of Silva's petition here under § 2254, constitutes the Supreme
Court's decisions decided before November of 2008, which include
<u>Crawford</u> but not <u>Melendez-Diaz</u>.

7

1.  <u>Contrary</u>

A state court decision is contrary to clearly established
federal law "'if the state court arrives at a conclusion opposite
to that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than this court on a
set of materially indistinguishable facts.'"  <u>Thaler v. Haynes</u>, -
-- U.S. ---, 2010 WL 596511, at *3 (U.S. Feb. 22, 2010) (quoting
<u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).  Silva contends
that the New Hampshire Supreme Court's decision is contrary to
<u>Crawford</u> because the court relied on its prior decisions that are
based on <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), and "blatantly
disregarded clearly established federal law in favor of
developing its own standard."

Silva is mistaken that the New Hampshire Supreme Court
relied on the legal standard from <u>Ohio v. Roberts</u> for its
Confrontation Clause analysis.  Although the supreme court
applied the <u>Roberts</u> reliability standard to claims brought under
the New Hampshire Constitution, the court recognized that the
federal standard applicable to Silva's Confrontation Clause claim
was articulated by the Supreme Court in <u>Crawford</u>.  <u>Silva</u>, 158
N.H. at 101 & 102.  The court relied on its analysis of the
<u>Crawford</u> standard in <u>State v. O'Maley</u>, 156 N.H. 125, 131-38
(2007), to deny Silva's federal claim.  Silva has neither argued

8

nor shown that the New Hampshire Supreme Court's analysis of
Crawford resulted in a legal conclusion that is the opposite of
the holding in that case, based on clearly established federal
law at the time of the decision.

    2.  <u>Unreasonable Application</u>

A state court decision is an unreasonable application of
federal law if the decision "identifies the correct governing
legal principle from the [Supreme] Court's decisions but
unreasonably applies that principle to the facts of the
prisoner's case." <u>Williams</u>, 529 U.S. at 413. "The state court's
interpretation or application of federal law must be 'objectively
unreasonable.'" <u>Abrante v. St. Amand</u>, --- F.3d ---, 2010 WL
366747, at *2 (1st Cir. Feb. 3, 2010). An objectively
unreasonable decision "'evinces some increment of incorrectness
beyond mere error.'" <u>Id.</u> (quoting <u>Foxworth v. St. Amand</u>, 570
F.3d 414, 425 (1st Cir. 2009)).

The New Hampshire Supreme Court correctly identified
Crawford as the source of the federal Confrontation Clause
standard and recited that "'[t]he crucial determination as to
whether an out-of-court statement violates the [Federal]
Confrontation Clause is whether it is 'testimonial' or not.'"
<u>Silva</u>, 158 N.H. at 102 (quoting <u>O'Maley</u>, 156 N.H. at 131). The

9

court then followed the analysis it had established in O'Maley for determining whether an out-of-court statement is testimonial, which analysis required considering the circumstances under which the statement was made.  Silva, 158 N.H. at 103.  A crucial factor in that analysis was whether the statement "represents the documentation of past events or the contemporaneous recordation of observable events."  Id. (internal quotation marks omitted). The two other factors were "whether the statement was prepared in a manner resembling ex parte examination" and "whether the statement is an accusation."  Id. (internal quotation marks omitted).

In Silva, the court determined that the results of the blood test were neutral, not an accusation, because they could have been either incriminating or exonerating.  The court also found it significant that even if the test results were deemed to be accusatory, they were conveyed by a witness, not just the lab report.  The court surmised that because a dozen or more technicians were involved in the testing, no single technician could have testified about the results and they would not remember any particular test that occurred months earlier.  The court concluded that McMullin properly testified about the results and was available for cross examination, which avoided a Confrontation Clause violation.  Silva, 159 N.H. at 103.

In addition, the supreme court noted that the lab report was not testimonial because it did not prove past events nor was it prepared in anticipation of trial.  Instead, the court decided, the lab report merely gave the result that Brady's blood contained morphine, which established that she had heroin in her body when she died.  Based on those circumstances, the New Hampshire Supreme Court held that neither McMullin's testimony nor the lab report were admitted in violation of the Confrontation Clause.  Id. at 104.

If Silva's case were tried now, the standard in Melendez-Diaz would apply.  There, the Supreme Court addressed a variety of factors which Massachusetts had relied on to show that the challenged statements were not testimonial, including the factors considered by the New Hampshire Supreme Court in O'Maley and Silva, and held that those factors are not indicia of whether an out-of-court statement is testimonial for purposes of the Confrontation Clause.[3]  129 S. Ct. at 2533-38.  Therefore, as the

---

[3] In O'Maley, the New Hampshire Supreme Court rejected the theory that laboratory results are business records and, therefore, are not testimonial, which is consonant with the United States Supreme Court's holding in Melendez-Diaz.  Compare O'Maley, 156 N.H. at 135, with Melendez-Diaz, 129 S. Ct. at 2538-39.

11

law has developed, the New Hampshire Supreme Court's analysis, based on its interpretation of Crawford, was mistaken.[4]

     For purposes of Silva's habeas petition, however, the operative question is whether the New Hampshire Supreme Court's application of the Crawford standard to the circumstances in Silva's case was objectively unreasonable.  In conducting that evaluation, this court must avoid any reliance on the analysis in Melendez-Diaz, which would provide the clarity of "twenty-twenty hindsight."  Instead, the court considers clearly established federal law at the time of Silva's appeal.

     In Crawford, the petitioner challenged the admissibility at trial of a witness's statement, which had been tape recorded by law enforcement, when the witness was not available for cross examination.  541 U.S. at 38.  The Court acknowledged its existing standard, established in Roberts, reviewed the history behind the Sixth Amendment, and rejected the reliability standard established in Roberts.  541 U.S. at 43-68.  In its place, the Court concluded that the primary focus of the Sixth Amendment is testimonial hearsay and that "[w]here testimonial evidence is at issue, [] the Sixth Amendment demands what the common law

_____

     [4]It is noteworthy that the dissent in O'Maley was prescient in interpreting Crawford as the Supreme Court would later do in Melendez-Diaz.  See O'Maley, 156 N.H. at 143-48.

required: unavailability and a prior opportunity for cross-
examination." Id. at 68. The Court, however, did not "spell out
a comprehensive definition of 'testimonial'" and acknowledged
that "our refusal to articulate a comprehensive definition in
this case will cause interim uncertainty." Id. & n.10.

Subsequently, the Supreme Court considered the application
of Crawford in two cases, one involving oral statements made by a
victim during a 911 call and the other involving written
statements in an affidavit given to a police officer. Davis v.
Washington, 547 U.S. 813 (2006). The Court explored the scope of
testimonial statements, within the meaning of Crawford, and
concluded:

> Without attempting to produce an exhaustive
> classification of all conceivable statements--or even
> all conceivable statements in response to police
> interrogation--as either testimonial or nontestimonial,
> it suffices to decide the present cases to hold as
> follows: Statements are nontestimonial when made in
> the course of police interrogation under circumstances
> objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an
> ongoing emergency. They are testimonial when the
> circumstances objectively indicate that there is no
> such ongoing emergency, and that the primary purpose of
> the interrogation is to establish or prove past events
> potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. Based on that rule, the Court concluded
that the 911 call was nontestimonial, but that absent a finding
of forfeiture by wrongdoing, the affidavit was testimonial and

13

barred by the Sixth Amendment.  Id. at 828 & 834.  Later, the
Court clarified that the forfeiture-by-wrongdoing rule applies as
a valid exception to the Sixth Amendment only when the defendant
intended to make a potential witness unavailable.[5]  Giles v.
California, 128 S. Ct. 2628, 2683 (2008).

After Crawford and before Melendez-Diaz, several federal
courts considered whether the results of various testing and
recording were admissible or violated the Confrontation Clause
under Crawford and concluded that such evidence was admissible.
See, e.g., United States v. Richardson, 537 F.3d 951, 960 (8th
Cir. 2008) (expert witness's testimony about the results of DNA
testing done by others did not violate the Confrontation Clause
under Crawford); United States v. Lamons, 532 F.3d 1251, 1262-64
(11th Cir. 2008) (phone call billing data recorded by a machine
was not a statement for purposes of Crawford analysis); United
States v. De La Cruz, 514 F.3d 121, 133-34 (1st Cir. 2008)
(autopsy report not testimonial under Crawford); United States v.
Moon, 512 F.3d 359, 362 (7th Cir. 2008) (testifying expert need
not have conducted tests himself to avoid violation of
Confrontation Clause); United States v. Washington, 498 F.3d 225,
229-30 (4th Cir. 2007) (blood test results were not testimonial,

---

[5]The Court also held that the rule in Crawford was not
retroactive.  Whorton v. Bockting, 549 U.S. 406 (2007).

but see dissent arguing that the results were testimonial
hearsay); United States v. Feliz, 467 F.3d 227, 235-36 (2d Cir.
2006) (autopsy reports nontestimonial and admissible as business
records); United States v. Ellis, 460 F.3d 920, 923-24 (7th Cir.
2006)(results of blood and urine testing not testimonial); Larkin
v. Yates, 2009 WL 20499991, at *7-*8 (C.D. Cal. July 9, 2009)
(DNA testing); Wright v. Quarterman, 2009 WL 1704566, at *7 (N.D.
Tex. June 17, 2009) (fingerprints).

        In Silva, the New Hampshire Supreme Court relied on the
Crawford analysis for forensic evidence developed by the
California Supreme Court in People v. Geier, 161 P.3d 104, 139-40
(Cal. 2007).  Other state courts also found the Geier analysis
persuasive.  See, e.g., Dunn v. State, 556 S.E.2d 377, 379-80
(Ga. App. 2008); Campos v. State, 256 S.W.3d 757, 764-65 (Tex.
App. 2008); People v. Rawlins, 884 N.E.2d 1019, 1025-33 (N.Y.
2008) (also following Commonwealth v. Verde, 827 N.E.2d 701
(Mass. 2005) that was later abrogated by Melendez-Diaz).  At
about the same time, while the Virginia Supreme Court decided
that the defendants in that case waived their Sixth Amendment
right to challenge the admissibility of certificates of analysis,
the dissenting justices concluded that the certificates were
testimonial within the meaning of Crawford and that the

15

defendants' Sixth Amendment rights had been violated.  <u>Magruder v. Commonwealth</u>, 657 S.E. 2d 113, 120-26 & 129-30 (Va. 2008).

The Supreme Court acknowledged in <u>Crawford</u> and again in <u>Davis</u> that it was not providing a comprehensive definition of what would constitute testimonial evidence.  Subsequent decisions by federal and state courts demonstrate that outside of the area of core testimonial statements to law enforcement officers, the courts varied widely in their interpretations of <u>Crawford</u> and <u>Davis</u> and many followed the analysis used by the New Hampshire Supreme Court in <u>Silva</u>.  Although the Supreme Court said in <u>Melendez-Diaz</u> that "[t]his case involves little more than the application of our holding in <u>Crawford</u>," <u>Melendez-Diaz</u>, 129 S. Ct. at 2542, the Court's decision was far from obvious to many courts that considered similar issues.  Indeed, the dissenting New Hampshire Supreme Court justices stated in <u>O'Maley</u>:  "The majority's thoughtful opinion is one of the best efforts a court has made to harmonize recent United States Supreme Court cases concerning the Confrontation Clause, the realities of criminal trial practice and state statutory provisions."  <u>O'Maley</u>, 156 N.H. at 140.

Under these circumstances, the New Hampshire Supreme Court's decision in <u>Silva</u>, although incorrect under the <u>Melendez-Diaz</u> standard, was not necessarily incorrect under <u>Crawford</u>, at the

16

time it was issued.  Further, the decision does not demonstrate a heightened level of error that would support a conclusion that the decision was an unreasonable application of <u>Crawford</u>. Therefore, Silva has not shown that he is entitled to relief under § 2254(d).


Conclusion

For the foregoing reasons, the respondent's motion for summary judgment (document no. 4) is granted.  The petition for a writ of habeas corpus is denied.

The clerk of court shall enter judgment accordingly and close the case.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

March 17, 2010

cc:  James W. Dennehy, Esquire
     Elizabeth C. Woodcock, Esquire